1
2
3
4

**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797
e-Mail: kevin@kjclawgroup.com

5
6
7
8
9

**TAULER SMITH, LLP**
Robert Tauler (SBN 241964)
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Telephone: (310) 590-3927
e-Mail: rtauler@taulersmith.com

10
11

Attorneys for Plaintiff
*Javier Santiago*

12

13

14

15

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

16
17
18
19
20
21
22
23
24

JAVIER SANTIAGO, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

STASH INVESTMENTS LLC, a Delaware limited liability company; and DOES 1 to 10, inclusive,

      Defendants.

CASE NO.

**CLASS ACTION COMPLAINT FOR:**

1. **Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; and**
2. **Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***

Filed Concurrently:

1. Plaintiff's CLRA Venue Affidavit

25
26
27
28

(***JURY TRIAL DEMANDED***)

-1-

CLASS ACTION COMPLAINT

Plaintiff Javier Santiago ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1.      Plaintiff brings this Class Action Complaint to challenge Stash Investments LLC's ("Stash" or "Defendant") deceptive advertising practices. Specifically, Stash's automatic renewal and continuous service offers in connection with an automated investment app it provides to consumers (*e.g.*, https://www.stash.com/automated-investing) violates clearly established law.

2.      Among other things, Stash (a) enrolls consumers in automatic renewal and continuous service subscriptions without providing clear and conspicuous disclosures about the program or the associated charges; (b) charges consumers' credit and debit cards without first obtaining their "affirmative consent" to the charge; and (c) fails to provide a cost-effective, timely, and easy-to-use mechanism for cancellation.

3.      In short, Stash's automatic renewal and continuous service offers violate California's Automatic Renewal Law (the "ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, which requires companies like Stash to clearly and conspicuously explain "automatic renewal offer terms."  As a result of these ARL violations, Stash has violated the California Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code §§ 1750, *et seq.  See King v. Bumble Trading, Inc.*, 393 F.Supp.3d 856, 870 (N.D. Cal. 2019) (an ARL violation can form the basis for a CLRA claim); *see also Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676–77 (9th Cir. 2018) ("[Plaintiff's] complaint alleges that Pluralsight violated the ARL by charging him without first providing information on how to cancel the subscription. The record

-2-

1  also indicates that consumers signing up for trial subscriptions were not specifically
2  given instructions on how to cancel before payment. This amply satisfies the UCL
3  requirement that an unlawful business practice be any violation of 'other laws.'").

4       4.   Stash has also violated the CLRA because (a) it "[u]ses[] deceptive
5  representations . . . in connection with [its] services" and "[a]dvertis[es] . . . [its]
6  services with [the] intent not to sell them as advertised." *See* Cal. Civ. Code §§
7  1770(a)(4) & (9).

8       5.   In addition, because Stash's automatic renewal "business practices"
9  violate the ARL, they also violate California Business & Professions Code §§
10 17200 (the "UCL").  *See*, *e.g.*, *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002)
11 (upholding false advertising claims against Nike; the Supreme Court explained that
12 the "unlawful" prong of § 17200 makes a violation of the underlying law a *per se*
13 violation of the UCL; the court held, "The UCL's scope is broad. By defining unfair
14 competition to include any '*unlawful* . . . business act or practice,' the UCL permits
15 violations of other laws to be treated as unfair competition that is independently
16 actionable.") (emphasis in original); *see also Stop Youth Addiction, Inc. v. Lucky
17 Stores, Inc.*, 17 Cal.4th 553, 561 (1998), *overruled on other grounds in Arias v.
18 Superior Court*, 46 Cal.4th 969 (2009) (holding that § 17200 allows a remedy even
19 if the underlying statute confers no private right of action).  California law is clear
20 that virtually any law or regulation—here, the ARL—can serve as a predicate for a
21 § 17200 "unlawful" violation.  *See People v. E.W.A.P., Inc.*, 106 Cal.App.3d 315,
22 319 (1980); *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383 (1992)
23 (holding that § 17200 "borrows" violations of other laws and treats them as
24 unlawful practices independently actionable under § 17200).

## THE PARTIES

26      6.   Plaintiff Javier Santiago is and at all relevant times mentioned was
27 both a resident of Los Angeles County, California and a "consumer," as defined by
28 Cal. Civ. Code § 1761(d) and Cal. Bus. & Prof. Code § 17601(d).

7.     Stash is a Delaware limited liability company with its principal place of business in New York, New York.  Stash is and at all relevant times mentioned was a "person," as defined by Cal. Civ. Code § 1761(c).

8.     Stash is an online and mobile financial service.  The company offers a variety of financial products, including the ability to buy different stocks, index funds, investment advice from a personal advisor, life insurance, and debit cards. On information and belief, Stash earns money through subscription fees. According to its website, Stash has more than 6 million users, more than 500 employees, and has raised more than $450 million in venture capital:

**We create financial opportunity.**
We're here to help everyday Americans invest and build wealth, $5 at a time.

| | |
|---|---|
| **2015** Stash launched | **6M+** Stashers |
| **$450M+** in VC funding (as of Jan. 2022) | **500+** Employees |

*See* https://www.stash.com/about.

9.     Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint.  Defendants shall together be referred to as "Defendants" or "Stash."

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class.  Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of

-4-

1  a foreign state.

2       11.   The Central District of California has specific personal jurisdiction

3  over Stash.  Specific jurisdiction over a non-resident defendant exists where: (1)

4  "[t]he non-resident defendant . . . purposefully direct[s] [it]s activities or

5  consummate[s] some transaction with the forum or resident thereof; or perform[s]

6  some act by which [it] purposefully avails [it]self of the privilege of conducting

7  activities in the forum, thereby invoking the benefits and protections of its laws;"

8  (2) the claim is one that "arises out of or relates to" the defendant's activities in the

9  forum state; and (3) the exercise of jurisdiction comports with "fair play and

10  substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin

11  Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff need only establish the

12  first two prongs, while it is the defendant's burden to "present a compelling case"

13  that the exercise of jurisdiction would not be reasonable. *Id.*

14       12.   ***Purposeful Availment.***  Under the first prong of the three-part test,

15  "purposeful availment" includes both purposeful availment and purposeful

16  direction, which are two distinct concepts. *Id.*  Where a case sounds in tort, as here,

17  courts employ the purposeful direction test.  Purposeful direction requires the

18  defendant have "(1) committed an intentional act, (2) expressly aimed at the forum

19  state, (3) causing harm that the defendant knows is likely to be suffered in the forum

20  state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing

21  *Schwarzenegger*, 374 F.3d at 802).  On information and belief, Stash regularly sells

22  its services and financial products to customers in California, including Plaintiff,

23  who purchased and received access to Stash's investment platform and services in

24  Los Angeles County, California.  In addition, because Stash does a substantial

25  amount of business in California, it is knowingly employing an illegal subscription

26  scheme directed at and harming California residents, including Plaintiff.

27       13.   ***Claim Arising Out of Action in the Forum Prong.***  Under the second

28  prong of the three-part specific jurisdiction test, personal jurisdiction exists where,

as here, the claim "arises out of or relates to" the defendant's activities in the forum state. Courts in the Ninth Circuit use a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities. In other words, the test is satisfied if the plaintiff would not have suffered loss "but for" defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Stash's contact with the forum—knowingly employing an illegal subscription scheme directed at California residents—is the basis of its violations of various false advertising statutes. But for Stash's contact with the forum, Plaintiff (and the thousands of other individuals who purchased Stash's deceptively advertised products and services) would not have suffered harm.

14. **Venue.** Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because Stash:

a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

b) does substantial business within this District;

c) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## GENERAL ALLEGATIONS

15. On December 17, 2017, Plaintiff signed up for an investment account through Stash's website. It was not until two and a half years later—in approximately September 2020—that Plaintiff noticed Stash began automatically billing his credit card $1 monthly.

16. On or about February 9, 2021, Plaintiff attempted to cancel his Stash account. However, Plaintiff faced great difficulty attempting to cancel, and ultimately gave up. He decided, at the time, that the stress and time involved in attempting to cancel his Stash account outweighed the $1 monthly charge. So,

Plaintiff decided to keep his account because doing so—and incurring the $1 monthly charge—was easier than spending even more time and effort attempting to cancel.

17.    But then, in August 2022—without any prior notice—Stash began automatically billing Plaintiff's credit card $3 monthly.

18.    Once Plaintiff noticed the $3 monthly (automatic) charges, he attempted to cancel his subscription so that no more charges would be made to his credit card.

19.    However, despite numerous attempts again—including, for example, searching on Stash's website for information about how to "cancel," "close," or "delete" his account—Plaintiff was finally able to close his account on June 13, 2023.

20.    On information and belief, it appears many consumers like Plaintiff have been unable to cancel their Stash accounts (let alone through a cost-effective, timely, and easy-to-use mechanism for cancellation).

21.    On further information and belief, Stash knowingly makes its cancellation process _extremely_ difficult and time consuming, knowing that many consumers like Plaintiff will decide—after attempting to cancel their subscriptions—that they are better off being charged $1 or $3 monthly than spending hours upon hours frustratingly trying to cancel their subscriptions.

22.    For example, there are numerous Reddit[1] threads describing the extreme difficulties consumers face when attempting to cancel their accounts, including from just several months ago:

///

///

///

///

_____

[1] Reddit is an online forum which allows registered users to post content.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 r/SwagBucks • 2 mo. ago
by jperezny



# STASH is a horrible SCAM!!! Fighting for a refund of 20 charges on a closed account from 1.5 yrs ago

I signed up with STASH through Swagbucks on 8/29/2021. At that time, my bank was incompatible with their system so I submitted an account closure. I never received any compensation from SB as I never went through with the offer.

Fast forward to March 2023 (1 1/2 years later), I discover (very busy and usually ignore <=$5 debits) that they have been charging me shady amounts of $1.00 and $3.00 (half of which have no consistency) and am often charged more than once a month since August of 2021.

I NEVER used the service. I have been going through HELL with them since my first request for a full refund and permanent closure on 3/29/23.

Customer Service Requests (email):

3/29/23 - took two days to receive a response (3/31) and received one refund (request was for 20 debits to be refunded).

4/7/23 - submitted longer request with detailed transaction list in form body, attached Excel spreadsheet and screen shots. NO RESPONSE - as of today, 4/14/23.

4/11/23 - submitted same request again (4/8) with detailed transaction list in form body, attached Excel spreadsheet and screen shots. NO RESPONSE - as of today, 4/14/23.

Customer Service Calls (phone - (800) 205-5164):

4/14 - 6 PM - spoke with a woman (could not understand her name or half of what she said due to her accent). She claimed that she initiated a refund and closed my account. This time, instead of being credited same day (as 3/31) transaction, was told it might credit on 4/18/23. I did not trust the company and specifically requested that I receive an email detailing the credit and account closure.

4/14 - 7 PM - after waiting 45 mins with only an account closure email and no proof a refund being initiated in sight, I called again and spoke with a man (again, thick accent and couldn't understand name). He told me there was no refund initiated and that he would put in a request for it to be reviewed in 24-48 business hours starting on Monday. So... basically, the first woman lied to me. He gave me the impression that he was also full of B.S. as I didn't receive an email stating the facts from him either (I stayed on the phone, and no not in SPAM). Frustrated as hell, I told him I would call back and speak with a manager in the morning (Sat).

Point of all of this - this company is a total SCAM. They're going out of their way to make it difficult for me to be refunded the shady and inconsistent charges that they have been making on my debit card for a year and a half. Giving me ONE refund out of 20 over two weeks ago, and not finalizing my transaction over two weeks later with five separate requests and a mountain a proof.

Issue is still not resolved and I've already spent over THREE HOURS on this nonsense!

Please for the sake of keeping your sanity, realize that this SB deal is too good to be true.

⇧ 15 ⇩     💬 19     ⬆ Share

https://www.reddit.com/r/SwagBucks/comments/12mibol/stash_is_a_horrible_scam_fighting_for_a_refund_of/.

///

CLASS ACTION COMPLAINT

23.    Worse, the Better Business Bureau reports "990 complaints closed in last 3 years," including "357 complaints closed in last 12 months."   *See* https://www.bbb.org/us/ny/new-york/profile/financial-technology/stash-0121-167448.  Many of the complaints are directed to Stash's confusing or inadequate cancellation  mechanisms and automatic charges.  For example:



**Initial Complaint**
05/17/2023

**Complaint Type:** Billing/Collection Issues
**Status:** Answered ❓

I paid for a stash subscription and then cancel the account and after it was canceled they continued to withdraw money out of my bank account of $9 every month and contacted status and they are telling me that I can't have access to the account to stop the withdrawers because the account doesn't exist so they are taking money out of the account out of my bank account for an account that does not exist anymore And they will not do nothing about it



Kelsi T
⭐ ☆ ☆ ☆ ☆

12/07/2022

Subscription based website that steals your money with no way to cancel, don't even sign up!!!



Christy B
⭐ ⭐ ☆ ☆ ☆

08/09/2022

I canceled my auto payments, canceled my account and emailed the company to cancel everything and 3 months later theyre still debiting my account without my permission and without any benefit to me.



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Karen H**
★☆☆☆☆                                                                07/06/2022

They obviously do not want you to ever close your accounts. The link they tell you to use to
close your retirement account just leads you in circles and you never get any where. The
customer service is non-existent since you cannot find a number to reach them anywhere
on the app



**Joshua L**
★☆☆☆☆                                                                07/05/2022

Ability to cancel subscription is non-existent. This is illegal. They keep charging money and
you cannot cancel.

**Kianga W**
★☆☆☆☆                                                                06/28/2022

This is a very shady company. They locked my account, which I had already deposited
money into, for two months. First, I received no information why my account was locked.
When I complained they said the needed documentation to verify my identity. Provided that,
remained locked weeks later. Of all the investing apps and companies I have used, they are
the only ones who hold your money after a trade for two days. Also found out that they only
do trades 4 times a day, no matter if its the middle of a weekday when the market is open.
Never seen that kind of investing before. It makes absolutely no sense because prices
fluctuate at a moments notice. You have to jump through hoops to cancel. I do not
understand why I have to pay a subscription fee for them to just loose my money. Another
thing, they do not charge your bank account like a regular subscription, they do it manually
every month. This makes it hard to put a stop payment from your bank.



**Tabitha M**
★☆☆☆☆                                                                05/10/2022

Can't delete account, can't find my stock to sell, can't cancel subscription! This is illegal! You
have to have the ability to cancel! I am beyond angry that these buttons are gone. I can't
even view the items I had in portfolio!

24.     Automatic renewal subscriptions affecting California consumers are
governed by the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*, which requires
companies like Stash to clearly and conspicuously explain "automatic renewal
offer terms," including by providing the following clear and conspicuous

CLASS ACTION COMPLAINT

disclosures:

> (a) that the subscription or purchasing agreement will continue until the consumer cancels;
>
> (b) the description of the cancellation policy that applies to the offer;
>
> (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;
>
> (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and
>
> (e) the minimum purchase obligation, if any.

*See* Cal. Bus. & Prof. Code § 17601(b)(1) – (5).

25. None of the above disclosures were properly provided to Plaintiff (if at all).

26. Stash also failed to provide a means for Plaintiff to cancel by using a "cost-effective, timely, and easy-to-use mechanism for cancellation." *Id.*, § 17602(b).

27. Critically, the ARL requires the automatic renewal offer terms must be presented to the consumer both:

> (a) *before* the purchasing contract is fulfilled, and in "visual proximity" to the *request for consent to the offer*; and
>
> (b) *clearly and conspicuously*, defined by the statute as one or more of the following:
>
> > i. in larger type than the surrounding text;
> >
> > ii. in contrasting type, font, or color to the surrounding text of the same size; or

iii.    set off from the surrounding text of the same size by symbols or other marks in a manner that clearly calls attention to the language.

*See id.*, §§ 17602(a)(1) & 17601(c).

28.    Nor does Stash properly disclose (a) any description of the cancellation policy that applies to the offer; (b) that the recurring charges will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan; or (c) when the consumer will be charged.

29.    In addition, Plaintiff did not receive an ARL-compliant retainable acknowledgement (e.g., email) explaining or providing (i) the automatic renewal offer's terms, (ii) the cancellation policy, and (iii) information about how to cancel Stash's services.   All are required by law.   *See* Cal. Bus. & Prof. Code § 17602(a)(3).

30.    The ARL also requires that "a business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service *exclusively online, at will*, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately."   Cal. Bus. & Prof. Code § 17602(d)(1).   The online method of termination must be in the form of either: (a) "[a] prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings," or (b) "[b]y an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information."   *Id.*   Stash violated these provisions, as well.

31.    If Plaintiff had known that Stash was going to enroll him in a program under which it would automatically renew his purchase for a subsequent term, post associated charges to his credit card without authorization, and make it impossible

to cancel, Plaintiff would not have purchased Stash's services and would not have paid any money to it.

## CLASS ACTION ALLEGATIONS

32.   Plaintiff brings this action on behalf of himself and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons in the United States who purchased a product or service from Stash as part of an automatic renewal plan or continuous service offer within the four years prior to the filing of this Complaint.

33.   The above-described class of persons shall hereafter be referred to as the "Class."  Excluded from the Class are any and all past or present officers, directors, or employees of Stash, any judge who presides over this action, and any partner or employee of Class Counsel.  Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

34.   In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> All persons in the State of California who purchased a product or service from Stash as part of an automatic renewal plan or continuous service offer within the four years prior to the filing of this Complaint.

35.   **Numerosity**.  The Class is so numerous that joinder of all members in one action is impracticable.  The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class, if not more (*e.g.*, as explained above, Stash's website boasts "6M+ Stashers," *see* https://www.stash.com/about).  But the precise

number of Class members is unknown to Plaintiff.

36.   **Typicality**.  Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Stash's course of conduct as described in this Complaint.  Identical to all members of the Class, Stash (a) enrolled Plaintiff in an automatic renewal and continuous service subscription without providing clear and conspicuous disclosures as required by California law; (b) charged Plaintiff for those services without obtaining his affirmative consent; (c) did not provide Plaintiff with information on how to cancel those services; (d) did not provide Plaintiff with a cost-effective, timely, and easy-to-use mechanism for cancellation, nor a method of cancellation required by § 17602; and (e) failed to send an ARL-compliant retainable acknowledgement consistent with Cal. Bus. & Prof. Code § 17602(a)(3).  Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Class.  Stash has no defenses unique to the Plaintiff.

37.   **Adequacy of Representation**.  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously.  Plaintiff has no antagonistic or adverse interests to those of the Class.

38.   **Existence and Predominance of Common Questions of Law or Fact**.  Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a) Do Stash's automatic renewal practices violate the ARL, Cal. Bus &

-14-

Prof. Code §§ 17600, *et seq.*?

b) Does Stash violate the CLRA, Cal. Civ. Code §§ 1750, *et seq.*?

c) Does Stash violate the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*?

d) Whether the members of the Class are entitled to damages and/or restitution.

e) What type of injunctive relief is appropriate and necessary to enjoin Stash from continuing its unlawful automatic renewal practices?

f) Whether Stash's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

39.   **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.   Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered.  Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

40.   By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class.   Plaintiff anticipates no difficulty in the management of this action as a class action.  The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would

substantially impair or impede the ability of such non-party Class members to protect their interests.

41.     **Ascertainability**.  Upon information and belief, Stash keeps extensive computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs.  Stash has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and it maintains contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

42.     The California Class also satisfies each of the class action requirements set forth above.  The allegations set forth above with regards to the Class, therefore, apply equally to the California Class.

## CLAIMS FOR RELIEF

### First Cause of Action

**Violation of the California Consumers Legal Remedies Act,**

**Cal. Civ. Code §§ 1750, *et seq*. (Automatic Renewal Law)**

**(By Plaintiff Against Defendants on Behalf of the Class)**

43.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

44.     The CLRA is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.

45. California enacted the ARL "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600.

46. Plaintiff and each member of the Class are "consumers" as defined by California Business & Professions Code section 17601(d). Stash's sales of its products and/or services on its website to Plaintiff and the Class were for an "automatic renewal" within the meaning of California Business & Professions Code section 17601(a).

47. Defendants failed to clearly and conspicuously disclose (a) the nature of the subscription agreement as one that will continue until the consumer canceled, (b) how to cancel the subscription, (c) the recurring amounts that would be charged to the consumer's payment account, (d) the length of the automatic renewal term, or (e) any minimum purchasing obligation(s).

48. Defendants have violated several of the ARL's provisions:

    a) Defendants have violated Cal. Bus. & Prof. Code § 17602(a)(1) because their offer did not "include a clear and conspicuous explanation of the price that will be charged . . ."

    b) Defendants have violated Cal. Bus. & Prof. Code § 17602(a)(2) by charging consumers' credit and debit cards without first obtaining their "affirmative consent" to the charge.

    c) Defendants have violated Cal. Bus. & Prof. Code § 17602(d)(1) by failing to "allow a consumer" who "accept[s] an automatic renewal or continuous service offer online" to "terminate the automatic renewal or continuous service exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately."

d) Defendants have violated Cal. Bus. & Prof. Code § 17602(a)(3) by failing to provide a permanently retainable post-transaction acknowledgment that allows cancellation before payment.

e) Defendants have violated Cal. Bus. & Prof. Code § 17602(b) by failing to provide a cost-effective, timely, and easy-to-use mechanism for cancellation.

49.     Through their violations of the ARL, Defendants have violated the CLRA.  *See King*, 393 F.Supp.3d at 870 (an ARL violation can form the basis for a CLRA claim); *see also Pluralsight*, 728 F. App'x at 676–77 ("[Plaintiff's] complaint alleges that Pluralsight violated the ARL by charging him without first providing information on how to cancel the subscription.  The record also indicates that consumers signing up for trial subscriptions were not specifically given instructions on how to cancel before payment.  This amply satisfies the UCL requirement that an unlawful business practice be any violation of 'other laws.'").

50.     As to this cause of action, <u>*at this time*</u>, Plaintiff seeks only injunctive relief at this time.  Pursuant to Cal. Civ. Code § 1782, in conjunction with the filing of this action, Plaintiff's counsel is notifying Defendants by separate letter of the particular violations of the CLRA and demanding that it correct or agree to correct the actions described in this Complaint.  If Defendants fail to do so, Plaintiff shall amend his Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages (including punitive damages) to which Plaintiff and the Class is entitled.

### **Second Cause of Action**

**Violation of the UCL (Bus. & Prof. Code, §§ 17200, *et seq.*)**

**(By Plaintiff Against Defendants on Behalf of the Class)**

51.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

52.     The UCL prohibits, and provides civil remedies for, "unfair

-18-

competition," which is defined as "any unlawful, unfair or fraudulent business act or practice." The UCL is written in "sweeping language" to include "anything that can properly be called a business practice and that at the same time is forbidden by law." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992) (internal brackets and quotation marks omitted).

53. The UCL has several substantive "prongs" which are a function of the statutory definition of "unfair competition." More specifically, under the UCL, "unfair competition" includes (i) an "unlawful" business act or practice, (ii) an "unfair" business act or practice, and (iii) a "fraudulent" business act or practice. *See* Bus. & Prof. Code, §§ 17200, *et seq.*

54. The "unlawful" prong of the UCL makes a violation of the underlying law a *per se* violation of the UCL. "By defining unfair competition to include any '*unlawful* . . . business act or practice,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable." *Kasky*, 27 Cal.4th at 950 (emphasis in original).

55. Defendants committed "unlawful," "unfair," and/or "fraudulent" business practices by, among other things: (a) enrolling Plaintiff and the Class in an automatic renewal and continuous service subscription without providing clear and conspicuous disclosures as required by California law; (b) charging Plaintiff and the Class for those services without obtaining the requisite affirmative consent; (c) failing to provide Plaintiff or the Class with information on how to cancel those services; (d) failing to provide Plaintiff or the Class with a cost-effective, timely, and easy-to-use mechanism for cancellation, nor a method of cancellation required by § 17602; and (e) failing to send an ARL-compliant retainable acknowledgement consistent with Cal. Bus. & Prof. Code § 17602(a)(3). Plaintiff reserves the right to allege other violations of law that constitute unlawful, unfair, or fraudulent business acts or practices.

56. Defendants' acts and omissions as alleged in this Complaint violate

obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

57.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described in this Complaint.

58.     Defendants' acts, omissions, nondisclosures, and misleading statements as alleged in this Complaint were and are false, misleading, and/or likely to deceive the consuming public.

59.     Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

60.     Pursuant to § 17203, Plaintiff and all Class members are entitled to restitution of all amounts Defendants received from them as a result of the foregoing conduct during the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair competition cease.

61.     Pursuant to § 17203, Plaintiff is entitled to an order enjoining Defendants from committing further acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Javier Santiago prays for relief and judgment in favor of himself and the Classes as follows:

A.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.     For an injunction putting a stop to the illegal conduct described herein and ordering Defendants to correct their illegal conduct and refrain from (i) automatically charging consumers without properly informing them in the future, and (ii) preventing consumers from cancelling their subscriptions.

C.     For pre- and post-judgment interest and costs of suit incurred herein.

1         D.     For attorneys' fees incurred herein pursuant to California Code of

2    Civil Procedure section 1021.5, California Civil Code section 1780, or to the extent

3    otherwise permitted by law.

4         E.     For such other and further relief as the Court may deem just and

5    proper.

6    **<u>DEMAND FOR JURY TRIAL</u>**

7         Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury

8    pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

9

10   DATED:  June 27, 2023            Respectfully submitted,

11                      **KJC LAW GROUP, A.P.C.**

12                      By: */s/ Kevin J. Cole*

13                      Attorneys for Plaintiff

14                      *Javier Santiago*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-